**FALL, Secretary of the Interior, v. UNITED STATES ex rel. LYNN.**

(Court of Appeals of District of Columbia. Submitted October 5, 1922. Decided November 6, 1922.)

No. 3824.

1. **Indians ⬳13—Secretary of the Interior has no discretion to withhold funds from guardian of incompetent allottee.**

Where a guardian for an incompetent Osage allottee had been appointed by a county court of Oklahoma, as authorized by Act April 18, 1912, § 3, amending the Osage Allotment Act, which gave to the Secretary of the Interior authority to investigate the conduct of the guardians and to bring proceedings for the protection of the interests of the allottees, the Secretary had no authority, under Act March 3, 1921, § 4, to withhold the payment of any portion of the income to which the incompetent allottee was entitled, since the provision of that act, limiting the payments to adults not having certificates of competency and to minors, does not apply where a legal guardian of an incompetent has been appointed.

2. **Indians ⬳13—Secretary of the Interior not given supervision over payments to guardians of incompetent allottee.**

The provision of Act March 3, 1921, § 4, that all payments to legal guardians and adults not having certificates of incompetency under the Osage Allotment Act shall be paid under the supervision of the superintendent of the Osage agency, does not apply to an incompetent allottee for whom a guardian had been appointed by the county court of the state, and even if that provision required the superintendent to see that the funds reached their proper destination, it would not relieve the Secretary of the Interior from the obligation to make payment to the guardian, as required by the act.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Mandamus ⬤⟿85—Does not lie to correct errors in discretion of Secretary of the Interior or in interpretation of statute.**

Mandamus will not lie to control the discretion of the Secretary of the Interior, or to correct a mere error in the interpretation of the statute, under which he is vested with discretionary power; and the rule is especially applicable to matters affecting the disposition of public lands, over which subject the law gives such Secretary general supervision.

**4. Mandamus ⬤⟿73(1)—Lies to compel Secretary of the Interior to pay income to guardian of incompetent Indian allottee.**

The Osage Allotment Act and the amendments thereto impose on the Secretary of the Interior the ministerial duty of paying the full income to the legal guardians of incompetent adult members of the tribe, and said Secretary cannot defeat mandamus to compel such payment on the hypothesis of a possible, though mistaken, interpretation of the scope of his authority.

Appeal from the Supreme Court of the District of Columbia.

Petition for mandamus by the United States, on the relation of W. G. Lynn, guardian of Rose Lasley, an incompetent Osage Indian, against Albert B. Fall, Secretary of the Interior. Judgment for relator, when demurrer to the answer of respondent was sustained and respondent refused to plead further, and respondent appeals. Affirmed.

C. E. Wright and E. S. Booth, both of Washington, D. C., for appellant.

J. W. Beller and C. H. Syme, both of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. Appellee, W. G. Lynn, as guardian of Rose Lasley, an incompetent Osage Indian allottee, filed his petition in the Supreme Court of the District of Columbia, praying a writ of mandamus to compel respondent, the Secretary of the Interior, to pay to him certain moneys belonging to his ward. To the answer of respondent, relator demurred. The demurrer was sustained, and, respondent refusing to further plead, a judgment was entered, from which this appeal was prosecuted.

The Osage Allotment Act of June 28, 1906 (34 Stat. 539), provided that money derived from the sale of leases upon oil lands belonging to Osage Indians, together with interest, royalties, the sale and leasing of lands, etc., should be paid quarterly to the enrolled members of the tribe, except in cases of minors, when the money was to be paid to the parents.

The Osage Allotment Act was amended by Act of Congress of April 18, 1912 (37 Stat. 86), which in section 3, provides:

"That the property of deceased and of orphan minor, insane, or other incompetent allottees of the Osage Tribe, such incompetency being determined by the laws of the state of Oklahoma, which are hereby extended for such purpose to the allottees of said Tribe, shall, in probate matters, be subject to the jurisdiction of the county courts of the state of Oklahoma."

The act then provides that the superintendent of the agency may at any time appear in court and defend the interests of an allottee and

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

whenever the superintendent or the Secretary of the Interior deem it necessary they—

"may investigate the conduct of executors, administrators, and guardians or other persons having in charge the estate of any deceased allottee or of minors or persons incompetent under the laws of Oklahoma."

They are further authorized to bring proceedings, civil or criminal, for "the preservation and protection of the interests of the allottee."

It was under the authority of this act that the county court of Osage county, Okl., on January 27, 1919, adjudged Rose Lasley to be incompetent and appointed relator her guardian. As guardian he received at stated periods the funds belonging to his ward, which were invested under the supervision of the county court. In September, 1921, respondent Secretary refused to pay to relator any of his ward's funds, unless relator would agree to invest the funds in certain specified securities, basing his refusal upon section 4 of the Act of Congress of March 3, 1921 (41 Stat. 1249), which provides:

"That from and after the passage of this act the Secretary of the Interior shall cause to be paid at the end of each fiscal quarter to each adult member of the Osage Tribe having a certificate of competency his or her pro rata share, either as a member of the tribe or heir of a deceased member, of the interest on trust funds, the bonus received from the sale of leases, and the royalties received during the previous fiscal quarter, and so long as the income is sufficient to pay to the adult members of said tribe not having a certificate of competency $1,000 quarterly except where incompetent adult members have legal guardians, in which case the income of such incompetents shall be paid to their legal guardians, and to pay for maintenance and education to the parents or natural guardians or legal guardians actually having minor members under twenty-one years of age personally in charge $500 quarterly out of the income of said minors all of said quarterly payments to legal guardians and adults, not having certificates of competency, to be paid under the supervision of the superintendent of the Osage agency, and to invest the remainder after paying all the taxes of such members either in United States bonds or in Oklahoma state, county, or school bonds, or place the same on time deposits at interest in banks in the state of Oklahoma for the benefit of each individual member under such rules and regulations as the Secretary of the Interior may prescribe."

[1] It will be observed that the jurisdiction of the county court is clearly defined as extending to "the property of deceased and of orphan minor, insane, or other incompetent allottees." While the authority of the Secretary of the Interior and the superintendent of the Osage Agency is with equal clearness defined, they have full power to investigate the conduct of a guardian to prevent dissipation of the estate and to take all necessary legal steps to protect the estate from waste or dissipation at the hands of the guardian.

The Act of March 3, 1921, requires the Secretary to make full payment each quarter of the funds due "to each adult member of the Osage Tribe having a certificate of competency his or her pro rata share," and to incompetent adult members having legal guardians "in which case the income of such incompetent shall be paid to their legal guardians." To adult members "not having certificates of competency" the payment is limited to $1,000 quarterly, and for the maintenance and education of minors to $500 quarterly. All funds belonging to such incompetents and minors in excess of the foregoing amounts after

paying taxes shall be invested under the supervision of the Secretary in one or more of the different classes of securities named in the act.

No misconduct of the guardian is here charged, but the funds are withheld upon the refusal of the guardian to invest them in the manner prescribed by the act of 1921. It would seem that this is a matter beyond the power and jurisdiction of the Secretary. The legal proceedings which the Secretary or superintendent are authorized to bring to prevent waste or dissipation of an estate by a guardian, must be brought in the proper court. No power is vested in the Secretary to deprive the court of full supervision of the estate and, in the absence of a statutory requirement to the contrary, to direct the guardian to invest the funds of the incompetent in such manner as to the court shall seem proper, subject always to investigation by the Secretary or superintendent. The statute, however, is mandatory upon the Secretary, requiring him to pay the income of an incompetent member under guardianship to the legal guardian.

It is clear that the investment of excess funds, in the securities commanded by the act, relates only to "members of the tribe, not having certificates of competency," and to "minor members under twenty-one years of age" in charge of "parents or natural or legal guardians." On the other hand, there can be no excess funds for investment in the case of incompetents under legal guardianship, since the Secretary is required to pay the full income to the guardian.

[2] The further provision that "all payments to legal guardians and adults, not having certificates of competency, shall be paid under the supervision of the Superintendent of the Osage Agency," we interpret to mean that the superintendent shall see that the funds for payment of the limited allowance to the two classes of allottees designated—guardians of minors, and adults, not having certificates of competency—shall be delivered to the proper person. There is no reason for supervision of payment to competent allottees, since their absolute right to the full income, without restriction, is recognized. Nor is supervision of payments to guardians of incompetents necessary, since they are under the direct jurisdiction and control of the court. However, if the term "legal guardian" be construed to include guardians of incompetents appointed by the courts, the mere act of the superintendent in seeing that the funds reach the proper destination, would not relieve the Secretary from making payment as required by the 1921 act.

[3, 4] It is well settled that mandamus will not lie to control the discretion of the Secretary of the Interior, or to correct a mere error in the interpretation of a statute, under which he is vested with discretionary power. Especially is this rule applicable to matters affecting the disposition of the public lands, a subject over which the law gives him general supervision and in which, of necessity, he is compelled to exercise wide discretion and judgment. Whatever discretion the Secretary may have with respect to the investment of surplus funds belonging to minors and adults, not having certificates of competency, no discretionary power is reposed in him in respect of the payment of the income of an incompetent Osage Indian to the duly appointed guardian.

The duty of the Secretary to pay the full income to competent adults and to the legal guardians of incompetent adult members of the Tribe, is expressly enjoined by statute. He is required to perform a plain ministerial act, without room for the exercise of any discretion whatever. The responsibility for the proper administration of the ward's estate is wholly with the court. The Secretary, therefore, cannot withhold payment, and at the same time avoid the mandatory power of the court to compel payment, upon the mere hypothesis of a possible, though mistaken, interpretation of the scope of his authority.

The judgment is affirmed, with costs.